UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| TEGO, INC., ) | |
| a Massachusetts corporation, ) | |
| ) | |
| Plaintiff, ) | |
| ) | CIVIL ACTION NO: |
| v. ) | 1:13-cv-02241-TWT |
| ) | |
| MAINTAG, INC., ) | |
| a Delaware corporation, ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

RESPONSE OF PLAINTIFF TEGO, INC. IN OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS OR IN THE ALTERNATIVE
MOTION TO COMPEL ARBITRATION AND STAY THIS ACTION

I.   INTRODUCTION

The contract at issue in this action **does not** contain an arbitration provision and, by its express terms, prevents the application of any purported prior agreement to arbitrate. Specifically, the Invoice[1] (Comp., Ex. B), the final document exchanged between the parties to complete the transaction from which this action stems, has a merger and integration clause that states: "This Invoice expressly limits acceptance to the terms and conditions on the face and subsequent

---

[1] Unless otherwise indicated, all capitalized terms in this brief reflect those defined in Plaintiff's Complaint and Jury Demand (the "Complaint" or "Comp.").

page(s) hereof and ***supercedes all other previous agreements and buyer's purchase order***." (Emphasis added). (For the Court's convenience, a true and correct copy of the Invoice is attached hereto as Exhibit 1). Defendant MAINtag, Inc. ("Defendant" or "MAINtag") accepted the Invoice from Plaintiff Tego, Inc. ("Plaintiff" or "Tego") (*see* Comp., ¶¶ 11, 14) and, therefore, submitted to its terms and conditions. Since an agreement to arbitrate is not included in the Invoice and it supercedes any other agreements between the parties, Defendant's Motion to Dismiss or in the Alternative Motion to Compel Arbitration and Stay this Action ("Defendant's Motion" or the "Motion") must be denied.

Ignoring this dispositive provision, Defendant presents matters outside the pleading in its attempt to fabricate a reason why it should not answer for its unpaid debts in the jurisdiction within which its principal place of business is located. If, based on the arguments herein, the Court is not inclined to deny arbitration outright, then it should allow Tego to pursue discovery on whether the arbitration provision contained in the November 9, 2009 MAINtag-Tego Liability Agreement (the "November 2009 Contract") actually applies to this matter. The record evidence, including the accompanying Declaration of Timothy P. Butler ("Butler Declaration" or "Butler Decl.") (a true and correct copy of which is attached hereto as Exhibit 2), illustrates that the November 2009 Contract, including its arbitration

provision, is irrelevant because the contractual arrangement at issue in this action did not "aris[e] out of or in connection with the [November 2009 Contract]" or a related contract concerning Airbus (the "Airbus Contract"), a prerequisite for arbitration under the November 2009 Contract.

Additionally, Defendant repeatedly argues that it was neither a party to the Invoice (an assertion contradicted by the well-pleaded allegations in the Complaint) nor the November 2009 Contract. If the Court takes Defendant at its word (it should not), then Defendant actually lacks standing to pursue this Motion, which rests entirely on the arbitration provision contained in the November 2009 Contract. In other words, because Defendant is allegedly a "stranger" to the November 2009 Contract (*see* Memorandum in Support of Defendant's Motion (the "Brief" or "Br.") at 9), it lacks standing to enforce any of that contract's provisions, including its arbitration clause.

Thus, Tego's Complaint, this Response in Opposition to Defendant's Motion, including its exhibits, and the controlling authorities require that Defendant's Motion be denied in its entirety.

## II.   STATEMENT OF FACTS

### A.   Facts Pertinent to this Dispute

Tego is a Massachusetts-based corporation that designs, manufactures, and sells Radio-Frequency IDentification ("RFID") chips, which are small electronic devices that provide a unique identifier and store information for the object to which they are attached. (Comp., ¶¶ 1, 6). On or about December 3, 2012, MAINtag, an Atlanta, Georgia-based corporation, contacted Tego and requested a 10 wafer order for 8KB RFID chips (the "Order"). (*Id.*, ¶¶ 2, 7). On or about December 3, 2012 and December 7, 2012, Tego and MAINtag negotiated the terms of the Order when Tego issued its "Quote" and MAINtag issued its "Order FBC03831" by which Tego agreed to accept and MAINtag agreed to pay $350,398.63, 30% upfront and 70% within 30 days after delivery, for the Order (the "Agreement"). (*Id.*, ¶ 8).

Tego received the 30% upfront payment on or about January 18, 2013. (*Id.*, ¶ 9). On or about March 6, 2013, Tego issued its "Invoice" pursuant to the Agreement, finalizing the terms of the Agreement and reflecting MAINtag's balance of $250,155.73 (the "Initial Balance"). (*Id.*, ¶ 10). On March 8, 2013, the Order was delivered to MAINtag, and MAINtag accepted delivery. (*Id.*, ¶ 11). Among other provisions, the Invoice contains a merger and integration clause,

which states: "This Invoice expressly limits acceptance to the terms and conditions on the face and subsequent page(s) hereof and supercedes all other previous agreements and buyer's purchase order." (*Id.*, Ex. B).

MAINtag failed to pay the Initial Balance on or before its due date April 8, 2013. (*Id.*, ¶ 12). On or about April 25, 2013, counsel for Tego sent a letter to MAINtag informing it that it was in material breach of its obligations to Tego under the Agreement by not paying the Initial Balance and demanding that MAINtag cure the breach. (*Id.*, ¶ 13). On or about April 30, 2013, Tego received $165,479.44 from MAINtag, a partial payment of the Initial Balance, leaving an outstanding balance of $84,676.29 (the "Outstanding Balance"). (*Id.*, ¶ 14). Despite the fact that MAINtag received and is enjoying the benefit of the Order and Tego complied with all of its obligations under the Agreement, to date, MAINtag has not paid the Outstanding Balance. (*Id.*, ¶ 15).

**B.     Additional Facts Responsive to Defendant's Motion**

Tego does not dispute that it entered into the November 2009 Contract with MAINtag, and agreed to arbitrate "a dispute, controversy or claim ("Dispute") arising out of or in connection with the [November 2009 Contract] or the Airbus Contract." (Butler Decl., ¶ 10). However, the materials provided to MAINtag pursuant to the Order and subsequent Invoice did not "aris[e] out of," "connect[]

with" or in any way relate to the November 2009 Contract or the Airbus Contract." (*Id.*, ¶ 11). Airbus representatives confirmed to Tego that the materials provided to MAINtag pursuant to the Order and Invoice were not related to the Airbus Contract. (*Id.*, ¶ 12). Moreover, the prices in the Invoice and the terms of payment, including a requirement that MAINtag make an upfront payment, were different from those provided by the November 2009 Contract, and were negotiated outside the scope of any dealings related to the Airbus Contract. (*Id.*).

Defendant's notation on its Order "56/AGREEMENT09/09" is indecipherable and irrelevant to Tego. (*Id.*, ¶ 13). Neither the numbers "56" nor "09/09" bear any relation to a business arrangement between Tego and MAINtag. (*Id.*). If MAINtag actually wanted to implicate the November 2009 Contract, it would have written either "11/09" or "09/11," not "09/09." (*Id.*). Regardless, Tego intentionally included a merger and integration clause in the Invoice to prevent any confusion about what terms and conditions applied to the transaction. (*Id.*, ¶ 14). Therefore, even if MAINtag tried to slip in a reference to the November 2009 Contract or the Airbus Contract in its Order, the merger and integration clause in Tego's Invoice would invalidate such a notation. (*Id.*).

Tego always believed it was doing business with a company named MAINtag that had its U.S. headquarters in Atlanta, Georgia and its European

headquarters in Paris, France (as is reflected on all of the documents attached to the Complaint). (*Id.*, ¶ 15). At no time during the process of negotiating the Order and Invoice with MAINtag did it indicate that Tego was only negotiating with a separate French entity named MAINtag, S.A.S., or that it would not be able to pursue any claims related to the Invoice in the United States. (*Id.*).

## III. ARGUMENT AND CITATIONS OF AUTHORITY

### A. <u>Relevant Legal Standard Regarding Arbitration</u>

"This Court has the power to compel arbitration under the FAA." *CPR - Cell Phone Repair Franchise Sys. v. Nayrami*, 896 F. Supp. 2d 1233 (N.D. Ga. 2012), citing 9 U.S.C. § 4. "Under federal law, arbitration is 'a matter of consent, not coercion.'" *World Rentals and Sales, LLC v. Volvo Constr. Equip. Rents, Inc.*, 517 F.3d 1240, 1244 (11th Cir. 2008) (quoting *Volt Info. Scis., Inc. v. Bd. of Trs. of the Leland Stanford Junior Univ.*, 489 U.S. 468, 479 (1989)). Notwithstanding the presumption in favor of arbitrating disputes, "the courts are not to twist the language of the contract to achieve a result which is favored by federal policy but contrary to the intent of the parties." *Goldberg v. Bear, Stearns & Co.*, 912 F.2d 1418, 1419-20 (1990); *accord Paladino v. Avnet Computer Technologies, Inc.*, 134 F.3d. 1054, 1057 (11th Cir. 1998). In other words, where "the parties dispute not the scope of an arbitration clause but whether an obligation to arbitrate exists, ***the***

7

*presumption in favor of arbitration does not apply*." *Applied Energetics, Inc. v. Newoak Capital Mkts., LLC*, 645 F.3d 522, 526 (2d Cir. 2011) (emphasis added).

"[T]he first task of a court asked to compel arbitration of a dispute is to determine whether the parties agreed to arbitrate that dispute." *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985); *see also Wheat, First Securities, Inc. v. Green*, 993 F.2d 814, 817 (11th Cir. 1993); 9 U.S.C. § 4. As demonstrated below, the parties to this action ***did not agree*** to arbitrate this dispute and compelling arbitration would, therefore, be improper.

### B. There Was No Agreement to Arbitrate this Dispute

The Invoice is the only contract relevant to this dispute and it **does not** contain an arbitration provision. It does, however, contain a merger and integration clause that "expressly limits acceptance to the terms and conditions on the face and subsequent page(s) [of the Invoice] and ***supercedes all other previous agreements and buyer's purchase order***." (*See* Exhibit 1 hereto) (emphasis added). As the above case law instructs, once a court determines that the parties did not agree to arbitrate a particular dispute, the court's inquiry into whether arbitration should be compelled is over. Therefore, because the indisputable terms and conditions do not include an agreement to arbitrate, Defendant's Motion should be denied in its entirety.

8

Moreover, as detailed in the accompanying Butler Declaration, while Tego does not dispute that it entered into the November 2009 Contract with MAINtag, and agreed to arbitrate "a dispute, controversy or claim ("Dispute") arising out of or in connection with the [November 2009 Contract] or the Airbus Contract," the materials provided to MAINtag pursuant to the Invoice did not "aris[e] out of," "connect[] with" or in any way relate to the November 2009 Contract or the Airbus Contract." But, regardless, even if the Invoice did meet these criteria (it did not), the merger and integration clause in the Invoice, by its explicit terms ("***supercedes all other previous agreements***"), precludes application and enforcement of that arbitration agreement in this matter for breach of the Invoice. *See*, *e.g.*, *ABHA Int'l, LLC v. Clover Int'l Corp.*, Civ. Action No. 11 Civ. 6841, 2012 U.S. Dist. LEXIS 23089 at **7-8 (S.D.N.Y. Feb. 16, 2012) (the arbitration clause in a 2005 agreement was not applied to a dispute over a separate 2009 agreement between the same parties because the 2009 agreement's merger clause "preclude[d] the consideration of anything outside the four corners of the agreement" or "'extrinsic proof to add to or vary' the terms of the agreement.") (a true and correct copy of the *ABHA Int'l* decision is attached hereto as Exhibit 3).

### C. **If the November 2009 is Considered by the Court, the Evidence Will Reveal That it is Inapplicable to This Matter**

#### 1. The Court should convert Defendant's Motion into a motion for summary judgment and allow discovery.

Defendant's Motion, a motion to dismiss based on an alleged arbitration clause, is purportedly brought pursuant to Fed. R. Civ. P. 12(b)(3) ("improper venue"), and Rule 12(b)(3) motions do allow for the introduction of evidence outside the pleadings. However, motions to dismiss related to arbitration clauses like this one "should be treated analogously to motions under" Fed. R. Civ. P. 12(b)(6), and a trial court may allow discovery related to such motions where the moving party present evidence outside the pleading (as Defendant has done). *Jackson v. Cintas Corp.*, Civ. Action No. 1:03-CV-3104-JOF 2004, U.S. Dist. LEXIS 30850 at *8 (N.D. Ga. Sept. 29, 2004). Under Fed. R. Civ. P. 12(b)(6), if "matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56." *See also Horsley v. Feldt*, 304 F.3d 1125, 1134 (11th Cir. 2002) (same as Fed. R. Civ. P. 12(b)(6)).

Therefore, if the Court is not inclined to deny arbitration outright based on the arguments herein, then Tego respectfully requests, and hereby moves the Court

10

pursuant to Fed. R. Civ. P. 56(f), for an Order: (1) allowing discovery; (2) providing adequate time for Tego to seek information regarding its claims and Defendant's defenses; and (3) providing Tego the opportunity to further respond and incorporate additional discovered information.

    2.    <u>The record evidence illustrates that the Invoice was between Tego and Defendant, and had nothing to do with the November 2009 Contract.</u>

Despite the fact that its principal place of business is located less than 10 miles from this Court, Defendant is apparently determined to circumvent its payment obligation by forcing Tego to submit to arbitration in Paris, France. In support of this desperate attempt to skirt Tego's collection efforts, Defendant introduces, among other things, (i) the November 2009 Contract, (ii) the allegation that the Invoice somehow stems from the November 2009 Contract, (iii) the Lo-Re Declaration, and (iv) the allegation that MAINtag, S.A.S., not Defendant, is the actual party to the Invoice. Contrary to the assertions in Defendant's Motion, discovery will reveal that the materials at issue in the Invoice have no relation to the November 2009 Contract or the Airbus Contract. Conspicuously, neither Mr. Lo-Re nor Defendant offer evidence about how the Agreement arises out of or in connection with the November 2009 Contract or the Airbus Contract. No such evidence exists.

11

In the event the Court disregards the dispositive merger and integration clause in the Invoice and considers Defendant's newly introduced "evidence," Tego respectfully requests that the Court also consider the accompanying Butler Declaration, which illustrates, among other things, that:

- the materials provided to MAINtag pursuant to the Invoice were not related to the November 2009 Contract or the Airbus Contract in any way;

- Airbus representatives confirmed to Tego that the materials provided to MAINtag pursuant to the Invoice were not related to the Airbus Contract;

- Defendant's notation on the Order "56/AGREEMENT09/09" is indecipherable and irrelevant, and, regardless, Tego included its merger and integration clause in the Invoice to prevent any confusion about what terms and conditions applied to the transaction; and

- Tego always believed it was doing business with a company named MAINtag that had its U.S. headquarters in Atlanta, Georgia and its European headquarters in Paris, France, and at no time during the process of negotiating the Order and Invoice with MAINtag did it

indicate that Tego was only negotiating with a separate French entity named MAINtag, S.A.S.

Thus, even if the Court considers evidence outside the pleading, it will find that: (i) there is no arbitration agreement governing this dispute and (ii) the question of whether Defendant or MAINtag, S.A.S. is liable for the Outstanding Balance is (at best for Defendant) a disputed issue of material fact.

### D.  **Defendant Lacks Standing to Pursue the Instant Motion**

Defendant's fundamental position in the Brief, that Defendant itself is not even a party to the contract containing the purported arbitration provision, presents a contradiction that is fatal to Defendant's Motion.

Defendant begins its Brief by arguing that it was neither a party to the Invoice nor the November 2009 Contract.  (*See* Br. at 1-2).  Then, Defendant actually refers to itself as "a stranger to the transaction" (Br. at 9) and claims that the Invoice "arise[s] out of a commercial legal relationship between Tego and **Maintag S.A.S.** [(as opposed to Defendant)]" (Br. at 12) (emphasis added).  Even Mr. Lo-Re testifies that "Defendant had no connection whatsoever with the order or the items involved." (Br. at Ex. B, ¶ 3).

Assuming, *arguendo* only, that Defendant is not actually a party to the November 2009 Contract, then Defendant does not have standing to pursue this

13

Motion, which rests entirely on the arbitration provision contained in a contract to which Defendant is, ***by its own contention and admission***, not a party.  In other words, if only MAINtag, S.A.S. (a nonparty), and not Defendant, is in privity with Tego in the November 2009 Contract, then only MAINtag, S.A.S., and not Defendant, can enforce the purported arbitration provision.  Thus, the Motion must be denied for lack of standing.[2]

## IV.  CONCLUSION

For the foregoing reasons, Tego respectfully requests that Defendant's Motion be dismissed in its entirety.[3]

---

[2] For purposes of this Response, Tego does not dispute the validity and enforceability of the arbitration provision contained in the November 2009 Contract ***in certain circumstances***.  As detailed throughout this Response, however, Tego does dispute that the arbitration provision has any applicability whatsoever to the instant dispute.  Therefore, the legal analyses in Sections III(A) and (B) of Defendant's Brief amount to nothing more than Defendant trying to fit a square peg in a round hole.  Unless the Court requests that it do so, Tego will refrain from addressing such inapplicable arguments.  It should be noted, however, that Defendant's analysis in these Sections suffers from the same lethal contradiction explained above.  Out of one side of its mouth, Defendant is arguing to enforce certain contractual provisions, but out of the other side of its mouth it is arguing that it is a "stranger" to those same contracts.

[3] If the Court is inclined to grant Defendant's Motion, Tego asks the Court for leave to file an Amended Complaint to attempt to cure any deficiencies in its pleadings. See Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave [to amend] when justice so requires.")

Respectfully submitted, this <u>28th</u> day of August, 2013.

<u>/s/ Eric S. Fisher</u>

Eric S. Fisher
Georgia Bar No. 250428
efisher@taylorenglish.com
TAYLOR ENGLISH DUMA LLP
1600 Parkwood Circle, South 400
Atlanta, GA  30339
(770) 434-6868 (telephone)

***Counsel for Plaintiff Tego, Inc.***

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| **TEGO, INC.**, a Massachusetts corporation, ) ) ) **Plaintiff**, ) ) v. ) ) **MAINTAG, INC.**, a Delaware corporation, ) ) ) **Defendant**. ) _____ ) | **CIVIL ACTION NO:** **1:13-cv-02241-TWT** |

## CERTIFICATION OF FONT TYPE AND SIZE

The undersigned counsel hereby certifies that the foregoing **RESPONSE OF PLAINTIFF TEGO, INC. IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS OR IN THE ALTERNATIVE MOTION TO COMPEL ARBITRATION AND STAY THIS ACTION** has been prepared with Times New Roman 14-Point Font, as approved in LR 5.1C.

/s/ Eric S. Fisher
Eric S. Fisher
Georgia Bar No. 250428

## CERTIFICATE OF SERVICE

I certify that on August 28th, 2013, a true and correct copy of the foregoing **RESPONSE OF PLAINTIFF TEGO, INC. IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS OR IN THE ALTERNATIVE MOTION TO COMPEL ARBITRATION AND STAY THIS ACTION** was electronically filed with the Clerk of Court using the CM/ECF system, which sent notification of such filing to the following counsel of record:

>Ronald B. Gaither
>SCHIFF HARDIN, LLP
>One Atlantic Center, Suite 2300
>1201 West Peachtree Street
>Atlanta, Georgia 30309
>(404) 437-7000
>rgaither@schiffhardin.com
>*Attorneys for Defendant MAINtag, Inc.*

>/s/ Eric S. Fisher
>Eric S. Fisher
>Georgia Bar No. 250428