Exhibit 2

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| TEGO, INC., <br> a Massachusetts corporation, <br><br> Plaintiff, <br><br> v. <br><br> MAINTAG, INC., <br> a Delaware corporation, <br><br> Defendant. | CIVIL ACTION NO: <br> 1:13-cv-02241-TWT |

## DECLARATION OF TIMOTHY P. BUTLER

1. My name is Timothy P. Butler. I am over the age of eighteen (18) and competent to give this Declaration. I have personal knowledge of all matters set forth herein. This Declaration is given for use in support of the Response of Plaintiff Tego, Inc. in Opposition to Defendant's Motion to Dismiss or in the Alternative Motion to Compel Arbitration and Stay this Action submitted in the above-styled action, and for any other purpose permitted by law.

2. I am Chief Executive Officer of Plaintiff Tego, Inc. ("Tego"). As such, I oversee all of its business activities along with Tego's Vice President of Sales and Secretary, Su Ahmad.

3. Tego is a Massachusetts-based corporation that designs, manufactures, and sells Radio-Frequency IDentification ("RFID") chips, which are small electronic devices that provide a unique identifier and store information for the object to which they are attached.

4. On or about December 3, 2012, MAINtag contacted Tego and requested a 10 wafer order for 8KB RFID chips (the "Order").

5. On or about December 3, 2012 and December 7, 2012, Tego and MAINtag negotiated the terms of the Order when Tego issued its "Quote" and MAINtag issued its "Order FBC03831" by which Tego agreed to accept and MAINtag agreed to pay $350,398.63, 30% upfront and 70% within 30 days after delivery, for the Order (the "Agreement").

6. Tego received the 30% upfront payment on or about January 18, 2013. On or about March 6, 2013, Tego issued its "Invoice" pursuant to the Agreement, finalizing the terms of the Agreement and reflecting MAINtag's balance of $250,155.73 (the "Initial Balance").

7. On March 8, 2013, the Order was delivered to MAINtag, and MAINtag accepted delivery.

8. MAINtag failed to pay the Initial Balance on or before the applicable due date, April 8, 2013. On or about April 30, 2013, Tego received $165,479.44

from MAINtag, a partial payment of the Initial Balance, leaving an outstanding balance of $84,676.29 (the "Outstanding Balance").

9. Despite the fact that MAINtag received and is enjoying the benefit of the Order and Tego complied with all of its obligations under the Agreement, to date, MAINtag has not paid the Outstanding Balance.

10. Tego entered into the November 9, 2009 MAINtag-Tego Liability Agreement (the "November 2009 Contract") with MAINtag, and agreed to arbitrate "a dispute, controversy or claim ("Dispute") arising out of or in connection with the [November 2009 Contract] or the Airbus Contract."

11. The materials provided to MAINtag pursuant to the Order and subsequent Invoice did not "aris[e] out of," "connect[] with" or in any way relate to the November 2009 Contract or the Airbus Contract."

12. Airbus representatives have confirmed that the materials provided to MAINtag pursuant to the Order and Invoice were not related to the Airbus Contract. Moreover, the prices in the Invoice and the terms of payment, including a requirement that MAINtag make an upfront payment, were different from those provided by the November 2009 Contract, and were negotiated outside the scope of any dealings related to the Airbus Contract.

13. Defendant's notation on its Order "56/AGREEMENT09/09" is indecipherable. Neither the numbers "56" nor "09/09" bear any relation to a business arrangement between Tego and MAINtag. If MAINtag actually wanted to implicate the November 2009 Contract, it would have written either "11/09" or "09/11," not "09/09."

14. Regardless, Tego intentionally included a merger and integration clause in the Invoice to prevent any confusion about what terms and conditions applied to the transaction. Therefore, even if MAINtag tried to slip in a reference to the November 2009 Contract or the Airbus Contract in its Order, the merger and integration clause in Tego's Invoice would invalidate such a notation.

15. Tego always believed it was doing business with a company named MAINtag that had its U.S. headquarters in Atlanta, Georgia and its European headquarters in Paris, France (as is reflected on all of the documents attached to the Complaint). At no time during the process of negotiating the Order and Invoice with MAINtag did it indicate that Tego was only negotiating with a separate French entity named MAINtag, S.A.S., or that it would not be able to pursue any claims related to the Invoice in the United States.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: August 27th, 2013.

*[signature]*

_____
Timothy P. Butler