UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| TEGO, INC.,<br>a Delaware corporation, | ) ) ) | |
| Plaintiff, | ) ) ) | CIVIL ACTION No 1:13-cv-02241 (TWT) |
| v. | ) ) | **REPLY DECLARATION OF BRUNO LO-RE** |
| MAINTAG, INC.,<br>a Delaware corporation, | ) ) ) | |
| Defendant. | ) ) | |

BRUNO LoRE declares as follows:

1. I am the President and CEO of MAINtag, S.A.S., a French Société par Actions Simplifiée. I make this reply declaration in further support of the motion by defendant MAINtag, Inc. (collectively with MAINtag S.A.S., "MAINtag") to dismiss the complaint, or, in the alternative, to compel arbitration and stay the action.

2. Plaintiff Tego, Inc., relies heavily on the "merger clause" which appears at the bottom of its document headed "INVOICE," annexed to the Complaint as Exhibit B. This appears from the dates on the documents before the Court, but I want to confirm based on my own direct knowledge that the invoice was generated nearly four months after the exchange of "Order" and "Quote" documents that Mr. Bishop, Tego's CEO, himself defines as the "Agreement" on which Tego sues MAINtag. American counsel advises me that for an additional, differing term included on an invoice to form part of a contract between merchants under the American Uniform Commercial Code, that addition must happen within a reasonable time period and acceptance of the additional term must be reasonably inferable from the conduct of the parties.



A gap of almost four months, particularly when the invoice follows actual shipping of the goods, is not reasonable and no such inference can be drawn here.

3.  More critically, the Liability Agreement, annexed as Exhibit A to my Declaration dated August 7, 2013 (the "Lo-RE Declaration") embodying the arbitration provision also includes the following provision at Section 8.1: "This contract shall not be amended except by specific agreement in writing signed by the duly authorized representatives of the Parties." The Invoice on which Tego premises its entire response was not signed by both parties. Consequently, it can be of no effect.

4.  Other aspects of the documents on which Tego relies confirm that this was not a domestic U.S. transaction. For example, that same Invoice states that taxes and duties are the obligation of MAINtag S.A.S. There would be no "duties" on a shipment from Massachusetts to Georgia. In our case, MAINtag S.A.S. in fact paid duties for this shipment to French customs authorities. Annexed as Exhibit A to this Declaration is a true copy of a document executed for Federal Express, the carrier which received the items in France on 06/03/2013 (March 6, 2013), showing the undertaking by MAINtag S.A.S. to provide proof to Federal Express that it had paid the amount of 52,918.32 euros to French customs ("Douane") for the imported goods. These goods were shipped to MAINtag S.A.S. in France, post-fabrication at Tego, by Tego's contractor, Syagrus Systems. Additionally, annexed hereto as Exhibit B is a copy of a document from October, 2011, showing communications between MAINtag S.A.S. and Tego about Syagrus Systems being Tego's shipper. Furthermore, with regard to the shipment at stake here, the second page of Exhibit A to this Declaration is the Federal Express shipping label specifically identifying Syagrus Systems as the shipper of the Tego wafers. This also confirms what appears on the face of the documents Tego annexed to its Complaint: the goods at issue were shipped to MAINtag S.A.S. in France.  Finally, a pro-forma invoice (also attached hereto



as part of Exhibit A), which was issued by shipper Syagrus Systems for the purposes of assessing custom duties and refers to the same quantities of wafers/units as those set forth on the Invoice, expressly states: "These commodities are authorized by the U.S. Government for export only to France for use by KATHLEEN LE BAIL", who is, as the Court will easily identify from the face of such attached documents in Exhibit A hereto, a MAINtag S.A.S. employee. Such pro-forma invoice establishes that the goods were shipped on March 5, 2013, before the Invoice was created on March 6, 2013, and that French customs duties were paid by the consignee MAINtag S.A.S.

5. The Invoice also uses the term, "All Shipments FCA point of origin." "FCA" is a term, developed by the International Chamber of Commerce. Annexed as Exhibit C is a copy of the on-line definition from the International Chamber of Commerce. U.S. counsel advises me that FCA is not a term found in the American Uniform Commercial Code. Again, this indicates the order at issue was not a domestic U.S. transaction as Tego contends.

6. Mr. Butler, Tego's CEO, asserts in his Declaration submitted in opposition to MAINtag, Inc.'s Motion that the pricing for the contract at issue differs from that of the Liability Agreement. This statement is incorrect, as can be seen from the face of the two documents. The pricing for the order of 22,800 units in Complaint Exhibit A, $6.38, corresponds exactly to the pricing in the Liability Agreement at Annex A, Lo-Re Declaration Exhibit A, for orders of up to 25,000 units. Similarly, the invoice pricing for 34,200 units, $5.70, corresponds exactly to the Liability Agreement pricing schedule for orders of up to 50,000 units.

7. Mr. Butler also says unidentified individuals at Airbus told him the goods at issue here were not subject to the Liability Agreement. Mr. Butler evidently has no direct, personal knowledge. I do. I know that the Liability Agreement was entered into at the request of Airbus. I also know that all the items which are the subject of this dispute were ordered by MAINtag



S.A.S. with the intention they be provided to Airbus, either directly, or through contractors designated by Airbus.

8.    Mr. Butler never responds to the facially indisputable fact that the "Quote" and "Order" documents (as well as the invoice and other shipping documents annexed hereto as part of Exhibit A) refer only to MAINtag S.A.S.' address in France.  He does not respond to the fact that the order document identifies MAINtag, S.A.S. by the French governmental identifier for its production facility, known as a "Siret" Number.  Annexed as Exhibit D to this Declaration is a copy of the screen shot of the "Kbis," a document created by the French government, showing MAINtag S.A.S.' status and the "Siret" number (corresponding to that shown on the "Order" document in Complaint Ex. A).  Because it is not in France and not a French entity, MAINtag, Inc. has no such "Siret" number.  Annexed as Exhibit E to this declaration is a copy of a screen shot of the information available on-line from the State of Delaware regarding MAINtag, Inc.

9.    Ultimately, TEGO's defense of the current motion is founded on a contradiction. MAINtag, Inc., it maintains, is a stranger to the Liability Agreement, and so cannot be bound by its arbitration clause.  The problem is that MAINtag, Inc. is equally a stranger to the contract at issue, as shown by the undisputed documentation.  But as Mr. Butler concedes, TEGO was under the impression that MAINtag had both European and American headquarters.  In any event, I am advised by American counsel that an arbitration agreement by an affiliated company can bind another affiliate in circumstances like those here.

10.   For all the reasons set forth above and previously, I respectfully ask the Court to grant MAINtag, Inc.'s motion to dismiss the complaint, or, in the alterative, to compel arbitration before the International Chamber of Commerce in France in accordance with the Liability Agreement and stay this action.

4



11. I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed at St. Maur des Fosses, France on September 11, 2013.

BRUNO LO-RE

**MAINtag SAS**
8 rue Edouard Vallerand
94100 SAINT - MAUR DES FOSSES
Tél : +33 (0)1 84 04 00 00
Fax : +33 (0)1 55 97 21 20
453 015 125 RCS CRETEIL

23004-2524

NY\51803408.1

5

# EXHIBIT A

03/06/2013 3:38:38 PM +0100 FEDEX EMEA                    PAGE 1    OF 3

 **Express**

Suivez vos envois en direct sur notre site   www.fedex.com/fr
Pour des informations complémentaires veuillez contacter notre service
clientèle au **0820 123 800** (0,118 Euros TTC/mn).

| TELECOPIE | 1er Avis ☒ | 2ème Avis Urgent ☐ | 3ème Avis Avant Retour ☐ |
|---|---|---|---|

| Fedex Roissy Sce Douane | A : MR. BERTRAND SMETS |
|---|---|
| De  :  Bilan Jama | Cie : MAINTAG |
| Tél  :  0820 123 800 | Tél : |
| Fax  :  0149199879 | Fax : 33155972120 |

| Date : 06/03/2013 | Nb pages :   3 |
|---|---|

**LTA :  794895097166**

Nous avons reçu pour votre compte les marchandises reprises sous la référence LTA(s) ci-dessus.

Selon les éléments en notre possession il apparaît que cet envoi doit vous être livré
contre remboursement des droits et taxes pour les motifs suivants :

▭   Procédure applicable pour les envois dont la valeur marchandise est supérieure à 25000 dollars.

▭   La situation de votre compte fait l'objet d'un contre remboursement.

Aussi nous vous remercions de bien vouloir nous donner votre accord pour paiement des droits et taxes
acquittés pour votre compte auprès de l'administration à la réception de la marchandise soit un montant
de  ( 52918.32 )  euros.

Commentaires :

Bonjour,veuillez svp faire un virement bancaire ou preparer un cheque a la livraison.Merci de
m''envoyer la preuve a rod@fedex.com.Merci par avance

**ATTENTION PAIEMENT A EFFECTUER A LA LIVRAISON**

**BON POUR ACCORD**

Date 06 / 03 / 13
Nom : Le Paul
Signature :

Cachet de la société :

Merci de nous retourner ce fax avant 16h30 pour livraison le lendemain
sous réserve des formalités de douanes accomplies.

Sincères salutations.

Pièces jointes :AWB, CI

Correspondance à adresser à :
Fedex Service Douane Import
Route de l'Arpenteur
Zone d'entretien - BP 10156
95702 Roissy CDG Cedex
Siège social : 125, avenue Louis Roche   92238 Gennevilliers Cedex
SNC au capital de 7 941 000 EUR - N° SIRET : 384 958 892 00010 - Code APE : 621Z

03/06/2013 3:38:38 PM +0100 FEDEX EMEA                                    PAGE 2    OF 3

Page 1 of 6



From (651) 209-6515        Origin ID: GPZA         FedEx
JEFF MILLER                                        Express
SYAGRUS SYSTEMS
4370 WEST ROUND LAKE RD

ARDEN HILLS, MN 55112
UNITED STATES

SHIP TO: 3318404000              BILL SENDER
KATHLEEN LE BAIL
MAINTAG
8 RUE EDOUARD VALLERAND


ST MAUR DES FOSSES, 94100
FR

Ship Date: 05MAR13
ActWgt: 15.0 LB
CAD: 4422710/NET3370       Dims: 11 X 15 X 12 IN

REF: 7539/FBC03831
DESC-1: Unmounted Semiconductor silicon wafer. Tego. 8KByte. Unbumpe
DESC-2: Unmounted Semiconductor silicon wafer. Tego. 8KByte. Gold bu
DESC-3:
DESC-4:
EEL AES X20130304054455
COUNTRY MFG: IL  IL
CARRIAGE VALUE: 100.00 USD
CUSTOMS VALUE: 350399.00 USD
T/C: S 112219960           D/T: R
SIGN: JEFF MILLER
EIN/VAT:
PKG TYPE: CUSTOMER

                                                            AM
                                                      INTL PRIORITY

TRK#  7948 9509 7166                                      94100
[0430]                                                    -FR
                                                          CDG
NX LBGA



5187330769948

CONSIGNEE COPY - PLEASE PLACE IN POUCH

After printing this label:
1. Use the 'Print' button on this page to print your label to your laser or inkjet printer.
2. Fold the printed page along the horizontal line.
3. Place label in shipping pouch and affix it to your shipment so that the barcode portion of the label can be read and scanned.

Warning: Use only the printed original label for shipping. Using a photocopy of this label for shipping purposes is fraudulent and could result in additional billing charges, along with the cancellation of your FedEx account number.

LEGAL TERMS AND CONDITIONS OF FEDEX SHIPPING DEFINITIONS. On this Air Waybill, "we", "our", "us", and "FedEx" refer to Federal Express Corporation, its subsidiaries and branches and their respective employees, agents, and independent contractors. The terms "You" and "your" refer to the shipper, its employees, principals and agents. If your shipment originates outside the United States, your contract of carriage is with the FedEx subsidiary, branch or independent contractor who originally accepts the shipment from you. The term "package" means any container or envelope that is accepted by us for delivery, including any such items tendered by you utilizing our automated systems, meters, manifests or waybills. The term "shipment" means all packages which are tendered to and accepted by us on a single Air Waybill. AIR CARRIAGE NOTICE. For any international shipments by air, the Warsaw Convention, as amended, may be applicable. The Warsaw Convention, as amended, will then govern and in most cases limit FedEx's liability for loss, delay of, or damage to your shipment. The Warsaw Convention, as amended, limits FedEx's liability. For example in the U.S. liability is limited to $9.07 per pound (20$ per kilogram), unless a higher value for carriage is declared as described below and you pay any applicable supplementary charges. The interpretation and operation of the Warsaw Convention's liability limits may vary in each country. There are no specific stopping places which are agreed to and FedEx reserves the right to route the shipment in anyway FedEx deems appropriate. ROAD TRANSPORT NOTICE. Shipment transported solely by road to or from a country which is a party to the Warsaw Convention or the Contract for the international Carriage of Goods by Road (the "CMR") are subject to the terms and conditions of the CMR, notwithstanding any other provision of the Air Waybill to the contrary. For these shipments transported solely by road, if a conflict arises between the provisions of the CMR and this Air Waybill, the terms of the CMR shall prevail. LIMITATION OF LIABILITY. If not governed by the Warsaw Convention, the CMR, or other international treaties, laws, other government regulations, orders, or requirements, FedEx's maximum liability for damage, loss, delay, shortage, mis-delivery, non-delivery, misinformation or failure to provide information in connection with your shipment is limited by this Agreement and as set out in the terms and conditions of the contract of carriage. Please refer to the contract of carriage set forth in the applicable FedEx Service Guide or its equivalent to determine the contractual limitation. FedEx does not provide cargo liability or all-risk insurance, but you may buy an additional charge for each additional U.S. $100 (or equivalent local currency for the country of origin) of declared value for carriage. If a higher value for carriage is declared and the additional charge is paid, FedEx's maximum liability will be the lesser of the declared value for carriage or your actual damages. LIABILITIES NOT ASSUMED. IN ANY EVENT, FEDEX WON'T BE LIABLE FOR ANY DAMAGES, WHETHER DIRECT, INDIRECT, INCIDENTAL, SPECIAL, OR CONSEQUENTIAL IN EXCESS OF THE DECLARED VALUE FOR CARRIAGE (INCLUDING BUT NOT LIMITED TO LOSS OF INCOME OR PROFITS) OR THE ACTUAL VALUE OF THE SHIPMENT, IF LOWER, WHETHER OR NOT FEDEX HAD ANY KNOWLEDGE THAT SUCH DAMAGE MIGHT BE INCURRED. FedEx won't be liable for your acts or omissions, including but not limited to incorrect declaration of cargo, improper or insufficient packaging, securing, marking or addressing of the shipment, or for the acts or omissions of the recipient or anyone else with an interest in the shipment or violations by any party of the terms of this agreement. FedEx won't be liable for damage, loss, delay, shortage, mis-delivery, non-delivery, misinformation or failure to provide information in connection with shipments of cash, currency or other prohibited items or in instances beyond our control, such as acts of God, perils of the air, weather conditions, mechanical delays, acts of public enemies, war, strike, civil commotion, or acts or omissions of public authorities(including customs and health officials) with actual or apparent authority. NO WARRANTY. We make no warranties, express or implied. CLAIMS FOR LOSS, DAMAGE OR DELAY. ALL CLAIMS MUST BE MADE IN WRITING AND WITHIN STRICT TIME LIMITS, SEE OUR TARIFF, APPLICABLE FEDEX SERVICE GUIDE, OR STANDARD CONDITIONS OF CARRIAGE FOR DETAILS. The Warsaw Convention provides specific written claims procedures for damage, delay or non-delivery of your shipment. Moreover, the interpretation and operation of the Warsaw Convention's claims provisions may vary in each country. Refer to the Convention to determine the claims period for your shipment. The right to damages against us shall be extinguished unless an action is brought within two years, as set forth in the Convention. FedEx is not obligated to act on any claim until all transportation charges have been paid. The claim amount may not be deducted from the transportation charge. If the recipient accepts the shipment without noting any damage on the delivery record, FedEx will assume the shipment was delivered in good condition. In order for us to consider a claim for damage, the contents, original shipping carton and packing must be made available to us for inspection. MANDATORY LAW, Insofar as any provision contained or referred to in this Air Waybill may be contrary to any applicable international treaties, laws, government regulations, orders or requirements such provisions shall remain in effect as a part of our agreement to the extent that is not overridden. The invalidity or unenforceability of any provisions shall not affect any other part of this Air Waybill. Unless otherwise indicated. FEDERAL EXPRESS CORPORATION. 2005 Corporate Avenue, Memphis, TN 38132, USA, is the first carrier of this shipment. Email address located at www.fedex.com.

03/06/2013 3:38:38 PM +0100 FEDEX EMEA                                    PAGE 3    OF 3

Page 5 of 6

This invoice must be completed in English

# COMMERCIAL INVOICE

| EXPORTER :<br>Tax ID# :<br>Contact Name : JEFF MILLER<br>Telephone No. : 651-209-6915<br>E-Mail :<br>Company Name/Address :<br>SYAGRUS SYSTEMS<br>4370 WEST ROUND LAKE RD<br><br>ARDEN HILLS MN 55112<br>Country : United States<br>Parties to Transaction :<br>☐ Related   ☐ Non-Related<br><br>Payment Terms :<br><br>Purpose of Shipment :  Commercial | | Ship Date :  05 Mar, 2013<br><br>Air Waybill No. / Tracking No. / Bill of Lading:  794855097165<br><br>Invoice No. :  Purchase Order No. : | | | |
|---|---|---|---|---|---|

| CONSIGNEE :<br>Tax ID# :<br>Contact Name : KATHLEEN LE BAIL<br>Telephone No. : 33 1 84 04 00 0<br>E-Mail :<br>Company Name/Address :<br>MAINTAG<br>8 RUE EDOUARD VALLERAND<br><br>ST MAUR DES FOSSES 94100<br>Country : France | | SOLD TO (if different from Consignee) :<br>☑ Same as CONSIGNEE :<br><br>Tax ID# :<br>Company Name/Address :<br><br><br>Country : | | | |
|---|---|---|---|---|---|

If there is a designated broker for this shipment, please provide contact information

Name of Broker    Tel No.    Contact Name

Duties and Taxes Payable by ☐ Exporter ☑ Consignee ☐ Other  If Other, please specify

| No. of<br>Packages | No. of<br>Units | Unit of<br>Measure | Description of Goods | Harmonized<br>Tariff Number | Country of<br>Origin | Unit Value | Total Value |
|---|---|---|---|---|---|---|---|
| | 4.00 | PCS | Commercial - Unmounted Semiconductor silicon wafer, Tego, 6KByte, Unbumped, 150um, waffle packs, T204097.1 Wafer 3,4,5,6 | 854231 | IL | 35,040.000000 | 140,160.00 |
| | 6.00 | PCS | Commercial - Unmounted Semiconductor silicon wafer, Tego, 6KByte, Gold bumped, 150um, ring frames, T107428.1 Wafers 14,15,16,17,25, T004567 Wafer 18 | 854231 | IL | 35,039.833333 | 210,239.00 |

| Total No. of Packages : 1 | Total Weight (indicate LBS or KGS) : 15.00 lbs | Incoterms : | DDU |
|---|---|---|---|
| Special Instructions : | | Subtotal : | 350,399.00 |
| | | Insurance : | 0.00 |
| | | Freight : | 0.00 |
| | | Packing : | 0.00 |
| Declaration Statement(s) : | | Handling : | 0.00 |
| These commodities are authorized by the U.S. Government for export only to France for use by KATHLEEN LE BAIL. They may not be transferred, transshipped, or otherwise disposed of in any other country, either in their original form or after being incorporated into other end-items, without prior approval of the relevant U.S. government agency. | | Other : | 0.00 |
| I declare that all the information contained in this invoice to be true and correct | | Invoice Total : | 350,399.00 |
| Originator or Name of Company Representative if the invoice is being completed on behalf of a company or individual : | | Currency Code : | USD |
| | | 05 Mar, 2013 | |
| Signature / Title / Date | | | |

https://www.fedex.com/shipping/html/en//PrintIFrame.html                                    3/5/2013

# EXHIBIT B

mercredi 11 septembre 2013 09:33:42 heure avancée d'Europe centrale

**Objet:** RE: Sends Wafer

**Date:** lundi 24 octobre 2011 23:23:42 heure avancée d'Europe centrale

**De:**  Jerry Russo

**À:**  'Kathleen LEBAIL'

**Cc:**  'Stephen Doyle', 'Su Ahmad', 'Bob Hamlin', 'Jeff Miller'

Hi Kathleen,

Jeff Miller at Syagrus is scheduled to ship tonight.

The package is address to Bertrand Smets and the FedEx tracking number is 7976 5918 7965.

Regards,
Jerry

---------------------------------------

*Jerry Russo*
*Principal Engineer*

**TEGO**
*www.te[...].com*

*375 Totten Pond Road*
*Waltham, Massachusetts 02451*
*Phone: 781-547-5680 x2103*
*Fax:   781-547-5822*
---------------------------------------

> **From:** Kathleen LEBAIL [mailto:kathleen.lebail@maintag.fr]
> **Sent:** Monday, October 24, 2011 10:00 AM
> **To:** 'Bob Hamlin'
> **Cc:** 'Stephen Doyle'; 'Jerry Russo'; 'Su Ahmad'
> **Subject:** Sends Wafer
>
> Hello,
>
> Have you finished the wafer process? Have you no problems? Do you think we'll have on Tuesday?
>
> Thank you
>
>
> Best regards,
>
> Kathleen Le Bail
> MAINtag

# EXHIBIT C



ABOUT ICC   NEWS & MEDIA   GLOBAL INFLUENCE   PRODUCTS & SERVICES   ADVOCACY, CODES & RULES   TRAINING & EVENTS   CHAMBER SERVICES   MEMBERSHIP

## The Incoterms® rules

The Incoterms® rules have become an essential part of the daily language of trade. They have been incorporated in contracts for the sale of goods worldwide and provide rules and guidance to importers, exporters, lawyers, transporters, insurers and students of international trade.

Below are short descriptions of the 11 rules from the Incoterms® 2010 edition. These should be read in the context of the full official text of the rules which can be obtained from the ICC BusinessBookstore
### RULES FOR ANY MODE OR MODES OF TRANSPORT
**EXW Ex Works**

"Ex Works" means that the seller delivers when it places the goods at the disposal of the buyer at the seller's premises or at another named place (i.e.,works, factory, warehouse, etc.). The seller does not need to load the goods on any collecting vehicle, nor does it need to clear the goods for export, where such clearance is applicable.

**FCA Free Carrier**

"Free Carrier" means that the seller delivers the goods to the carrier or another person nominated by the buyer at the seller's premises or another named place. The parties are well advised to specify as clearly as possible the point within the named place of delivery, as the risk passes to the buyer at that point.

**CPT Carriage Paid To**

"Carriage Paid To" means that the seller delivers the goods to the carrier or another person nominated by the seller at an agreed place (if any such place is agreed between parties) and that the seller must contract for and pay the costs of carriage necessary to bring the goods to the named place of destination.

**CIP Carriage And Insurance Paid To**

"Carriage and Insurance Paid to" means that the seller delivers the goods to the carrier or another person nominated by the seller at an agreed place (if any such place is agreed between parties) and that the seller must contract for an pay the costs of carriage necessary to bring the goods to the named place of destination.
"The seller also contracts for insurance cover against the buyer's risk of loss of or damage to the goods during the carriage. The buyer should note that under CIP the seller is required to obtain insurance only on minimum cover. Should the buyer wish to have more insurance protection, it will need either to agree as much expressly with the seller or to make its own extra insurance arrangements."
**DAT Delivered At Terminal**

"Delivered at Terminal" means that the seller delivers when the goods, once unloaded from the arriving means of transport, are placed at the disposal of the buyer at a named terminal at the named port or place of destination. "Terminal" includes a place, whether covered or not, such as a quay, warehouse, container yard or road, rail or air cargo terminal. The seller bears all risks involved in bringing the goods to and unloading them at the terminal at the named port or place of destination.

**DAP Delivered At Place**

"Delivered at Place" means that the seller delivers when the goods are placed at the disposal of the buyer on the arriving means of transport ready for unloading at the named place of destination. The seller bears all risks involved in bringing the goods to the named place.

**DDP Delivered Duty Paid**

"Delivered Duty Paid" means that the seller delivers the goods when the goods are placed at the disposal of the buyer, cleared for import on the arriving means of transport ready for unloading at the named place of destination. The seller bears all the costs and risks involved in bringing the goods to the place of destination and has an obligation to clear the goods not only for export but also for import, to pay any duty for both export and import and to carry out all customs formalities.

### RULES FOR SEA AND INLAND WATERWAY TRANSPORT
**FAS Free Alongside Ship**

"Free Alongside Ship" means that the seller delivers when the goods are placed alongside the vessel (e.g., on a quay or a barge) nominated by the buyer at the named port of shipment. The risk of loss of or damage to the goods passes when the goods are alongside the ship, and the buyer bears all costs from that moment onwards.

**FOB Free On Board**

"Free On Board" means that the seller delivers the goods on board the vessel nominated by the buyer at the named port of shipment or procures the goods already so delivered. The risk of loss of or damage to the goods passes when the goods are on board the vessel, and the buyer bears all costs from that moment onwards.

**CFR Cost and Freight**

"Cost and Freight" means that the seller delivers the goods on board the vessel or procures the goods already so delivered. The risk of loss of or damage to the goods passes when the goods are on board the vessel. the seller must contract for and pay the costs and freight necessary to bring the goods to the named port of destination.

**CIF Cost, Insurance and Freight**

"Cost, Insurance and Freight"means that the seller delivers the goods on board the vessel or procures the goods already so delivered. The risk of loss of or damage to the goods passes when the goods are on board the vessel. The seller must contract for and pay the costs and freight necessary to bring the goods to the named port of destination.

"The seller also contracts for insurance cover against the buyer's risk of loss of or damage to the goods during the carriage. The buyer should note that under CIF the seller is required to obtain insurance only on minimum cover. Should the buyer wish to have more insurance protection, it will need either to agree as much expressly with the seller or to make its own extra insurance arrangements."

Download the foreword to Incoterms® 2010

© Copyright ICC 2013

# EXHIBIT D

Greffe du Tribunal de Commerce de CRETEIL
Immeuble le Pascal
Centre Commercial de Créteil Soleil
94049 CRETEIL CEDEX

453 015 125 R.C.S. CRETEIL
Vos références : LMB/AP 2896
Nos références : 54
(2011 B 00765)

## Extrait Kbis

### IMMATRICULATION AU REGISTRE DU COMMERCE ET DES SOCIETES
Extrait au 27 Mars 2011

**IDENTIFICATION**

| | |
|---|---|
| Dénomination sociale : | MAINTAG |
| Numéro d'identification : | 453 015 125 R.C.S. CRETEIL |
| Numéro de gestion : | 2011 B 00765 |
| Date d'immatriculation : | 16 Février 2011 |

**RENSEIGNEMENTS RELATIFS A LA PERSONNE**

| | |
|---|---|
| Forme juridique : | Société par actions simplifiée |
| Au capital de : | 133 795,00 Euros |
| Adresse du siège : | 8 Rue Edouard Vallerand 94100 St Maur Des Fosses |
| Durée de la société : | Jusqu'au 06 AVRIL 2103 |
| Date d'arrêté des comptes : | 31 Décembre |
| Constitution - Dépôt de l'acte constitutif : | Au Greffe du Tribunal de Commerce de PARIS le 06 Avril 2004 sous le numéro 5646 |
| Transfert de : | PARIS |
| Dépôt de l'acte : | Au Greffe du Tribunal de Commerce de CRETEIL le 16 Février 2011 sous le numéro 2538 |

**ADMINISTRATION**

| | |
|---|---|
| Président | Monsieur LORE Bruno né(e) le 12/11/1971 à PARIS 75016 de nationalité Française demeurant 45 Bis Quai Du Port Au Fouarre 94100 St Maur Des Fosses |
| Commissaire aux comptes titulaire | APSIS AUDIT (526 638 061 R C S PARIS) 6 Rue Du Gal De Larminat 75015 Paris forme juridique Société anonyme de presse |
| Commissaire aux comptes suppléant | LAC CONSEIL 10 Boulevard De Strasbourg 75010 Paris |

**RENSEIGNEMENTS RELATIFS A L'ACTIVITE COMMERCIALE**

| | |
|---|---|
| Origine de la société : | Transfert du siège et de l'établissement principal 9 R FRANCAISE 75002 PARIS à compter du 31 Janvier 2011 |
| Origine du fonds ou de l'activité : | Création d'un fonds de commerce |
| Activité : | Ingénierie, études techniques et réalisations de solutions de traçabilité pour l'industrie et autres commercialisations. |
| Adresse de l'établissement principal : | 8 Rue Edouard Vallerand 94100 St Maur Des Fosses |
| Commencement d'activité le : | 01 Janvier 2004 |

Page 1

Greffe du Tribunal de Commerce de CRETEIL
Immeuble le Pascal
Centre Commercial de Créteil Soleil
94049 CRETEIL CEDEX

453 015 125 R.C.S. CRETEIL
Vos références : LMB/AP 2896
Nos références : 54
(2011 B 00765)

### Extrait Kbis

## IMMATRICULATION AU REGISTRE DU COMMERCE ET DES SOCIETES
### Extrait au 27 Mars 2011

*Mode d'exploitation :*     Exploitation directe

**OBSERVATIONS**

*16 Février 2011*   *numéro  58326*     La société ne conserve pas d'établissement secondaire dans le ressort
                                        de l'ancien siège

Extrait délivré à CRETEIL le 28 mars 2011  sur    2    page(s)

Le Greffier,

 

### Fin de l'extrait

Page 2

# EXHIBIT E

Division of Corporations - Online Services                                           Page 1 of 1

Delaware.gov | Text Only                    Governor | General Assembly | Courts | Elected Officials | State Agencies

## Department of State: Division of Corporations

**HOME**
About Agency
Secretary's Letter
Newsroom
Frequent
Questions
Related Links
Contact Us
Office Location

**SERVICES**
Pay Taxes
File UCC's
Delaware Laws
Online
Name Reservation
Entity Search
Status
Validate
Certificate
Customer Service
Survey

**INFORMATION**
Corporate Forms
Corporate Fees
UCC Forms and
Fees
Taxes
Expedited
Services
Service of Process
Registered Agents
Get Corporate
Status
Submitting a
Request  How to
Form a New
Business Entity
Certifications,
Apostilles &
Authentication of
Documents

Frequently Asked Questions   View Search Results

Entity Details

THIS IS NOT A STATEMENT OF GOOD STANDING

| | | | |
|---|---|---|---|
| File Number: | 5163394 | Incorporation Date / Formation Date: | 06/01/2012 (mm/dd/yyyy) |
| Entity Name: | MAINTAG INC. | | |
| Entity Kind: | CORPORATION | Entity Type: | GENERAL |
| Residency: | DOMESTIC | State: | DE |

**REGISTERED AGENT INFORMATION**

| | | | |
|---|---|---|---|
| Name: | THE COMPANY CORPORATION | | |
| Address: | 2711 CENTERVILLE RD STE 400 | | |
| City: | WILMINGTON | County: | NEW CASTLE |
| State: | DE | Postal Code: | 19808 |
| Phone: | (302)636-5440 | | |

Additional Information is available for a fee. You can retrieve Status for a fee of $10.00 or more detailed information including current franchise tax assessment, current filing history and more for a fee of $20.00.

Would you like ⊙ Status ⊙ Status,Tax & History Information [Submit]

[Back to Entity Search]

To contact a Delaware Online Agent click here.

site map | about this site | contact us | translate | delaware.gov

https://delecorp.delaware.gov/tin/controller                    9/10/2013