IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA

TEGO, INC.,

    Plaintiff,

v.

MAINTAG, INC.,

    Defendant.

Case No. 1:13-cv-02241-TWT

**DEFENDANT'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF ITS MOTION PURSUANT TO FED. R. CIV. P. 55(c) TO SET ASIDE CLERK'S ENTRY OF DEFAULT AND FOR STAY OF PROCEEDINGS**

**INTRODUCTION**

Defendant-Appellant MAINtag, Inc. ("**MAINtag**") respectfully submits this reply memorandum of law in further support of its motion (the "**Motion**") to set aside the Clerk's entry of default in this matter and for a stay of proceedings pending appeal.

Plaintiff-Appellee Tego, Inc.'s ("**Tego**") opposition to the motion proceeds under two misapprehensions. First, Tego overlooks the controlling law on what constitutes a non-frivolous appeal from a denial of a motion to compel arbitration and for a stay of proceedings. As explained below, MAINtag's appeal is not frivolous. Nor is it maintained for purposes of delay. MAINtag's principal brief on appeal already has been filed with the Eleventh Circuit. Although the appeal

was selected for the Eleventh Circuit's mediation program, and MAINtag therefore could have sought a deferral of the filing of its principal brief in connection with the January 15, 2014 mediation session, it has not done so.

Second, Tego erroneously assumes that a default judgment has been entered under Fed. R. Civ. P. 55(b). That is not the case, nor were the prerequisites for entry of a default judgment satisfied here.

## ARGUMENT

### I. MAINTAG'S APPEAL IS NOT FRIVOLOUS.

A claim is not frivolous if it has "some *possible* validity," *Nat'l Auto Lenders, Inc. v. SysLOCATE, Inc.*, 2010 WL 4867583, at *2 (S.D. Fla. Apr. 27, 2010) (internal quotations omitted) (emphasis in original). The Eleventh Circuit stated the strong public policy reasons for that rule in *Blinco v. Green Tree Servicing, LLC*, 366 F.3d 1249, 1251 (11th Cir. 2004):

> By providing a party who seeks arbitration with swift access to appellate review, Congress acknowledged that one of the principal benefits of arbitration, avoiding the high costs and time involved in judicial dispute resolution, is lost if the case proceeds in both judicial and arbitral forums. If the court of appeals reverses and orders the dispute arbitrated, then the costs of the litigation in the district court incurred during appellate review have been wasted and the parties must begin again in arbitration.

One court correctly has described this as a "broad standard," *In re Friedman's, Inc.*, 2007 WL 7647111, at *1 (Bankr. S.D. Ga. June 26, 2007), that is, one typically finding appeals non-frivolous.

This is illustrated by the Eleventh Circuit's decision in *Advanced Bodycare Solutions, LLC v. Thione Int'l, Inc.*, 524 F.3d 1235 (11th Cir. 2008), cited by Tego. In that case, the contractual dispute resolution provision called for non-binding arbitration or mediation. Ultimately, the Court of Appeals concluded that mediation was not encompassed by the Federal Arbitration Act ("**FAA**") because it would not produce an award as the FAA contemplates. *Id.* at 1239-40. Nevertheless, the Eleventh Circuit also concluded that the initial motion for a stay pending appeal was not frivolous because movant had made "at least a colorable claim that there is an 'agreement to arbitrate,' 9 U.S.C. § 2, and hence that a § 3 stay is proper." *Id.* at 1238.

That is the case here as well. Although this Court found itself unable to resolve whether the claim at issue fell within the scope of the arbitration provision, there was no dispute that there was a valid agreement to arbitrate. The Liability Agreement, Section 7.2.1 (ECF Doc. 9-2) provided broadly that "[i]n the event of a dispute, controversy or claim ("Dispute"), arising out of or in connection with the contract [the Liability Agreement] or the Airbus Contract," certain steps would be followed, culminating with the Dispute being exclusively "and finally determined

3

and settled by arbitration under the Rules of Conciliation and Arbitration of the International Chamber of Commerce." (*Id*., Section 7.2.2.1)  MAINtag maintains that, both under the general policies of the FAA and the particular language of the arbitration provision that specified the application of rules giving the arbitral panel the power to decide the scope of arbitration, compelling arbitration and a stay of proceedings remains warranted.  MAINtag has expeditiously sought review of that question by the Court of Appeals.

With respect, MAINtag believes the Court overlooked aspects of the record demonstrating that Tego's claim for an alleged balance due on an order of RFID chips falls within the scope of the undisputed arbitration provision.  Tego advanced two principal arguments against arbitration.[1]  The first was that MAINtag, Inc. was not a signatory to the Liability Agreement.[2]  But, the record includes the admission by Tego's chief executive officer that it regarded MAINtag, Inc. and its French

---

[1] Tego raised other arguments, but without basis.  Although its CEO asserted pricing of the RFID chips at issue differed from pricing specified in the Liability Agreement, a simple comparison of the order documents and the pricing appendix to the Liability Agreement show they are the same.  *See* Lo-Re Reply Decl. ¶ 6 (Doc 11-1).  Tego also tried to rely on a unilateral merger and integration provision appearing on its invoice, but it is ineffective in view of Section 8.1 of the Liability Agreement, which states, "This contract shall not be amended except by specific agreement in writing signed by the duly authorized representatives of the Parties." (Lo-Re Reply Decl. ¶ 3) (Doc. 11-1).

[2] Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Motion.

affiliate, MAINtag S.A.S., as one company:  "Tego always believed it was doing business with **a company named MAINtag** that had its U.S. headquarters in Atlanta, Georgia and its European headquarters in Paris, France." Declaration of Timothy P. Butler, ¶ 15 (Doc. 10-2).  Similarly, the documents annexed to Tego's Complaint all show it dealt directly, and only, with MAINtag S.A.S.

On numerous occasions in such circumstances, where the claims against affiliated companies "are based on the same facts and are inherently inseparable," *J.J. Ryan & Sons, Inc. v. Rhone Poulenc Textile, S.A.,* 863 F.2d 315, 320 (4th Cir. 1988), the Eleventh Circuit and other courts have permitted the arbitration agreement to be invoked by the non-signatory affiliate. *Accord Physician Consortium Servs., LLC v. Molina Healthcare, Inc.,* 414 Fed. Appx. 240, 242 (11th Cir. 2011)*; MS Dealer Serv. Corp. v. Franklin*, 177 F.3d 942, 947 (11th Cir. 1999); *Sunkist Soft Drinks, Inc. v. Sunkist Growers, Inc.,* 10 F.3d 753, 757 (11th Cir. 1993); *McBro Planning & Dev. Co. v. Triangle Elec. Constr. Co.*, 741 F.2d 342, 344 (11th Cir. 1984) (same result on equitable estoppel theory)[3];

---

[3]   *MS Dealer*, *Sunkist Soft Drinks* and *McBro Planning* are regarded as abrogated by *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624 (2009), to the extent they permitted enforcement of the arbitration agreement by a non-signatory when the law of the state governing the underlying contract prohibited it.  Georgia's law does not permit such enforcement. *See Lawson v. Life of the S. Ins. Co.*, 648 F.3d 1166 (11th Cir. 2011).  Here, however, the arbitration agreement is governed by French law, not Georgia law, and there is no suggestion that controlling French law would impose such a restriction.

*Sam Reisfeld & Son Import Co. v. S.A. Eteco*, 530 F.2d 679, 681 (5th Cir. 1976); *JLM Indust., Inc. v. Stolt-Neilsen, S.A.*, 387 F.3d 163, 177-78 (2d Cir. 2004); *S. Mills, Inc. v. Nunes,* 2011 WL 2358652, at *4 (N.D. Ga. June 9, 2011) ("Precedent holds that agents of a signatory to an arbitration agreement can themselves invoke the signatory's agreement. . . . 'If it were otherwise, it would be too easy to circumvent the agreements by naming individuals as defendants instead of the entity [ ] themselves.'" (citations omitted)); *Bloxom v. Landmark Pub. Corp.,* 184 F.Supp.2d 578, 582 (E.D. Tex. 2002); *Collins v. Int'l Dairy Queen, Inc.,* 169 F.R.D. 690, 692-93 (M.D. Ga. 1997).

Second, Tego offered the unsupported assertion by its CEO that the chips in the order at issue were unrelated to either the Liability Agreement or the Airbus contract, both facially within the scope of the arbitration agreement.[4] MAINtag's President contradicted this assertion. So did Tego's own Su Ahmad, who stated in another document annexed to the Complaint that he would notify "Airbus next week of your non-payment . . . so that Airbus can be aware that the further supply of tags could be affected going forward." (Complaint Exh. C). Before this lawsuit

---

[4] Tego's CEO also relied on purported verbal statements to him by unidentified Airbus personnel (Butler Decl. ¶ 12) (Doc. 10-2), but none of these statements were in writing or put before the Court. In any event, MAINtag's president contradicted these claims on the basis of his own direct knowledge. Bruno Lo-Re Reply Decl. ¶ 7 (Doc. 11-1).

was begun at least, it appears that he understood that the RFID chip order related to Tego's and MAINtag's joint work for Airbus.

There is an important public policy at issue here. "The Arbitration Act establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 24-25 (1983). "[P]arties must clearly express their intent to exclude categories of claims from their arbitration agreement." *Ivax Corp. v. B. Braun of Am., Inc.*, 286 F.3d 1309, 1320 (11th Cir. 2002) and cases there cited. This policy has even greater force when the arbitral agreement involves foreign parties or specifies a foreign venue for arbitration, as it does here. *See, e.g., Bautista v. Star Cruises*, 396 F.3d 1289, 1294 n.7 (11th Cir.), *cert. dismissed*, 545 U.S. 1136 (2005). As the Supreme Court has stressed:

> [C]oncerns of international comity, respect for the capacities of foreign and transnational tribunals, and sensitivity to the need of the international commercial system for predictability in the resolution of disputes require that we enforce the parties' agreement, even assuming that a contrary result would be forthcoming in a domestic context.

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 629 (1985).

Contrary to Tego's contention, the matters to be considered by the Eleventh Circuit are not primarily factual. Rather, they raise questions of law. On the very issue that troubled this Court, the Eleventh Circuit has held that an arbitration provision adopting the American Arbitration Association's Arbitration Rules was an agreement for the arbitral tribunal to resolve whether a given claim falls within the scope of the arbitration agreement. AAA Rule 8(a) gave the arbitrator "the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement." *See Terminix Int'l Co. v. Palmer Ranch Ltd. P'ship*, 432 F.3d 1327, 1332-33 (11th Cir. 2005) and cases there cited; a*ccord S. Farms Ltd. v. Am. Farmland Investors Corp.*, 2006 WL 2038532, at *1 (M.D. Fla. July 19, 2006).

By the reasoning of that decision, the conceded arbitration agreement here also gives the arbitrators the power to determine whether Tego's claim falls within the scope of the arbitration provision. The conceded arbitration agreement calls for application of the International Chamber of Commerce's Rules of Conciliation and Arbitration. Rule 6(3) provides in part: "If any party against which a claim has been made . . . raises one or more pleas concerning the existence, validity or scope of the arbitration agreement . . . the arbitration shall proceed and any question of jurisdiction or of whether the claims may be determined together in that arbitration

8

shall be decided directly by the arbitral tribunal . . . ."[5] Consequently, the Court's articulated uncertainty as to what falls within the scope of the arbitration provision is a matter the parties already had agreed the arbitration tribunal would resolve, and thus was no bar to compelling them to proceed with arbitration.

## II.   TEGO MISAPPREHENDS THE PROCEDURAL POSTURE OF THE CASE.

It is apparent from its papers opposing the motion to set aside the Clerk's default that Tego misapprehends the procedural posture of the case. Its papers, and the cases it cites, all assume a **default judgment** has been entered under Fed. R. Civ. P. 55(b). That is not the case. A clerk's **default** was noted under Fed. R. Civ. P. 55(a). The docket contains no judgment.

First, Tego did not take the steps required to secure entry of a judgment. Indeed, it is doubtful that Tego's Complaint would qualify for entry of a default judgment by the Clerk without further proceedings.[6] In any event, because

---

[5]   International Chamber of Commerce Rules of Conciliation and Arbitration (January 1, 2012), *available at* http://www.iccwbo.org/products-and-services/arbitration-and-adr/arbitration/icc-rules-of-arbitration/. For the convenience of the Court, a copy of Rule 6 is attached as <u>Exhibit A</u>.

[6]   A default judgment under Fed. R. Civ. P. 55(b)(1) is available only for claims seeking "a sum certain or a sum that can be made certain by computation." It is not clear the Complaint does this. The fourth claim avers no sum certain for damages. The other claims do not provide a basis by which pre-judgment interest could be computed.

9

MAINtag did not default in appearance in the action, default judgment against it cannot be taken without a noticed application. *See* Fed. R. Civ. P. 55(b)(2).

Moreover, the cases discussed in Tego's opposition brief involve obtaining a stay pending appeal from a judgment and thus do not bear on this case.[7] In particular, the citation of *Hilton v. Braunskill,* 481 U.S. 770 (1987), is inapposite. That case involved a habeas corpus petition granted in the District Court and addressed a stay pending appeal of that outcome, a context wholly unrelated to the instant matter. Equally, the Rule 60(b) showing that Tego says must be met simply does not apply here, where there is no judgment.

## CONCLUSION

Ironically, Tego's haste in asking the Clerk to note a default by jumping the gun on the date its counsel had said Tego would do so has had the consequence of adding paperwork to the Court's docket and increased litigation expense to both parties in a matter which should be in arbitration, thereby frustrating a core public policy goal of the FAA.

---

[7] *Rakovich v. Wade*, 834 F.2d 673 (7th Cir. 1987) (stay of post-trial judgment); *Western Surety Co. v. Mooney Const., Inc.*, 2013 WL 6048721 (N.D. Ga. Nov. 14, 2013) (same). *Chempower, Inc. v. Robert McAlpine, Ltd.*, 849 F. Supp. 459 (S.D.W. Va. 1994), also cited by Tego, involved the grant of stay of a state court proceeding to permit arbitration, modification of which was sought. It presents the opposite of the situation here.

Accordingly, for all the reasons set forth above and in its initial memorandum of law, MAINtag respectfully requests that the Court set aside the Clerk's entry of default and grant a stay pending the appeal from the denial of a motion to compel arbitration and for a stay of proceedings.

Respectfully submitted this the 9th day of December, 2013.

> SCHIFF HARDIN LLP
>
> By: *s/ Ronald B. Gaither*
> Ronald B. Gaither
> Georgia Bar No. 282292
> One Atlantic Center, Suite 2300
> 1201 West Peachtree Street
> Atlanta, Georgia 30309
> (404) 437-7000
>
> *Attorneys for Maintag, Inc.*

# EXHIBIT A

International Chamber of Commerce
Rules of Conciliation and Arbitration
Rule 6

**Article 6: Effect of the Arbitration Agreement**
1)
Where the parties have agreed to submit to arbitration under the Rules, they shall be deemed to have submitted ipso facto to the Rules in effect on the date of commencement of the arbitration, unless they have agreed to submit to the Rules in effect on the date of their arbitration agreement.
2)
By agreeing to arbitration under the Rules, the parties have accepted that the arbitration shall be administered by the Court.
3)
If any party against which a claim has been made does not submit an Answer, or raises one or more pleas concerning the existence, validity or scope of the arbitration agreement or concerning whether all of the claims made in the arbitration may be determined together in a single arbitration, the arbitration shall proceed and any question of jurisdiction or of whether the claims may be determined together in that arbitration shall be decided directly by the arbitral tribunal, unless the Secretary General refers the matter to the Court for its decision pursuant to Article 6(4).
4)
In all cases referred to the Court under Article 6(3), the Court shall decide whether and to what extent the arbitration shall proceed. The arbitration shall proceed if and to the extent that the Court is prima facie satisfied that an arbitration agreement under the Rules may exist. In particular:
(i) where there are more than two parties to the arbitration, the arbitration shall proceed between those of the parties, including any additional parties joined pursuant to Article 7, with respect to which the Court is prima facie satisfied that an arbitration agreement under the Rules that binds them all may exist; and
(ii) where claims pursuant to Article 9 are made under more than one arbitration agreement, the arbitration shall proceed as to those claims with respect to which the Court is prima facie satisfied (a) that the arbitration agreements under which those claims are made may be compatible, and (b) that all parties to the arbitration may have agreed that those claims can be determined together in a single arbitration.
The Court's decision pursuant to Article 6(4) is without prejudice to the

admissibility or merits of any party's plea or pleas.
5)
In all matters decided by the Court under Article 6(4), any decision as to the jurisdiction of the arbitral tribunal, except as to parties or claims with respect to which the Court decides that the arbitration cannot proceed, shall then be taken by the arbitral tribunal itself.
6)
Where the parties are notified of the Court's decision pursuant to Article 6(4) that the arbitration cannot proceed in respect of some or all of them, any party retains the right to ask any court having jurisdiction whether or not, and in respect of which of them, there is a binding arbitration agreement.
7)
Where the Court has decided pursuant to Article 6(4) that the arbitration cannot proceed in respect of any of the claims, such decision shall not prevent a party from reintroducing the same claim at a later date in other proceedings.
8)
If any of the parties refuses or fails to take part in the arbitration or any stage thereof, the arbitration shall proceed notwithstanding such refusal or failure.
9)
Unless otherwise agreed, the arbitral tribunal shall not cease to have jurisdiction by reason of any allegation that the contract is non-existent or null and void, provided that the arbitral tribunal upholds the validity of the arbitration agreement. The arbitral tribunal shall continue to have jurisdiction to determine the parties' respective rights and to decide their claims and pleas even though the contract itself may be non-existent or null and void.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**

| | |
|---|---|
| TEGO, INC.,<br><br>    Plaintiff,<br><br>v.<br><br>MAINTAG, INC.,<br><br>    Defendant. | Case No. 1:13-cv-02241-TWT |

**CERTIFICATE OF COMPLIANCE / SERVICE**

In accordance with LR 7.1(D), NDGa., the undersigned counsel hereby certifies that this document was prepared in Times New Roman 14-point font, which is approved by the Court in Local Rule 5.1(B).

I further certify that on December 9, 2013, the foregoing was electronically filed with the Clerk of the Court using the CM/ECF filing system, a copy of which will be electronically served on the counsel of record below:

                                          _s/ Ronald B. Gaither_
                                           Ronald B. Gaither